NORTHERN DISTRICT OF TEXAS
FILED

OCT 1 5 2025

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND THOMAS PARKER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-CV-2262-D-BW |
| | § | |
| SCOTT BESSENT, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[2] |

## ANSWERS TO FIRST MAGISTRATE JUDGE'S QUESTIONNAIRE

**QUESTION 1:** Your letter complaint and attached documents appear to sue Scott Bessent, Secretary of the Treasury, for employment discrimination. Are you suing the defendant for employment discrimination?

**ANSWER:**

__X__ Yes                          _____ No

If you answered "Yes," provide the following information:

a. Where (city and state) did the events upon which your lawsuit is based happen? Farmer Branch Texas

b. Where (city and state) are the employment records relevant to the events upon which your lawsuit is based maintained and administered?
I think in Farmers Branch Texas

c. Where (city and state) would you have worked had the alleged unlawful employment practices not occurred? Ardmore Oklahoma

d. Where (city and state) is your former employer's principal office?
Washington DC

---

[2] By Special Order No. 3-251, this pro se case has been automatically referred for judicial screening.

e. Explain why this case should proceed in the Dallas Division of the Northern District of Texas.

*I really do not know. Other then the two lawyer's told me it should be.*

**QUESTION 2:**  Included with your complaint are documents referencing Case No. IRS-22-0112-M.  (Dkt. No. 3 at 3-5, 9.)  Did you file a claim of discrimination relating to this case number with the Equal Employment Opportunity ("EEO") division of the agency with which you were employed?

**ANSWER:**

X Yes                          _____ No

If you answered "Yes,"

a. With which agency did you file your claim of discrimination?
*Department of The Treasury*

b. What was the date (month, day, and year) that you filed the claim of discrimination? *07-09-2018*

c. Attach to your answers to this questionnaire a copy of the claim of discrimination that you filed with the EEO division of your agency.
*I have an File From the Lawyer If you have a way to recive it.*

**QUESTION 3:**  Did the EEO division of your agency issue a final agency decision addressing your claim of discrimination?

**ANSWER:**

X Yes                          _____ No

If you answered "Yes,"

a. What was the date (month, day, and year) on which you received the final agency decision? *May 27 2025*
*OCT 12 2022*

b. Attach to your answers to this questionnaire a copy of the final agency decision.

4

**QUESTION 4:** Did you appeal to the United States Equal Employment Opportunity Commission ("EEOC") from your agency's final agency decision?

**ANSWER:**

___X___ Yes                              _____ No

If you answered "Yes,"

a. Did the EEOC issue a final decision concerning your charge of discrimination?

                                        ___X___ Yes          _____ No

b. What was the date (month, day, year) on which the EEOC issued its final decision? _May 27 2025_

c. What was the date (month, day, year) on which you received the EEOC's final decision? _Jun 6, 2025_
                        _E-mail from my Lawyer_

d. Attach to your answers to this questionnaire a copy of the EEOC's final decision.


**QUESTION 5:** Your complaint does not identify an address for service of process for Defendant Scott Bessent. Provide the address where this defendant may be served with process.

**ANSWER:** How am I suppose to know that?
US Department of the Treasury
1500 Pennsylvania Avenue NW
Washington DC 20220
The Honorable Scott Bessent

5

**STATE OF** _____

**COUNTY OF** _____

## <u>VERIFICATION</u>

I understand that a false statement or answer to any interrogatory in this cause of action will subject me to penalties for perjury. I declare (or certify, verify, or state) under penalty of perjury that the foregoing answers are true and correct. 28 U.S.C. § 1746.

SIGNED on ___ $OCT - 09 -$ ___, 2025.


_Raymond Thomas Parker_
(Signature of Raymond Thomas Parker)

6

MIME-Version:1.0
From:ecf_txnd@txnd.uscourts.gov
To:Courtmail@localhost.localdomain

Message-Id:<16606083@txnd.uscourts.gov>
Subject:Activity in Case 3:25-cv-02262-D-BW Parker v. Bessent Judge's
Questionnaire
Content-Type: text/plain
This is an automatic e-mail message generated by the CM/ECF system.
Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States
policy permits attorneys of record and parties in a case (including pro se
litigants) to receive one free electronic copy of all documents filed electronically, if
receipt is required by law or directed by the filer. PACER access fees apply
to all other users. To avoid later charges, download a copy of each document
during this first viewing. However, if the referenced document is a transcript,
the free copy and 30 page limit do not apply.

U.S. District Court
Northern District of Texas

Notice of Electronic Filing
The following transaction was entered on 9/26/2025 9:42 AM CDT and filed
on 9/25/2025

Case Name: Parker v. Bessent

Case Number: 3:25-cv-02262-D-BW
https://ecf.txnd.uscourts.gov/cgi-bin/DktRpt.pl?408472

Filer:

Document Number: 8

Copy the URL address from the line below into the location bar
of your Web browser to view the document:
https://ecf.txnd.uscourts.gov/doc1/177118021459?caseid=408472&de_seq_num=24&magi
c_num=MAGIC

Docket Text:
First Magistrate Judge's Questionnaire
sent to Raymond Thomas Parker. Responses due by 10/16/2025. (Ordered
by US Magistrate Judge Brian McKay on 9/25/2025) (knb)

3:25-cv-02262-D-BW Notice has been electronically mailed to:

3:25-cv-02262-D-BW Notice required by federal rule will be delivered by other
means (as detailed in the Clerk's records for orders/judgments) to:

Raymond Thomas Parker
17204 S Maple
Kellyville, OK 74039

The following document(s) are associated with this transaction:
Document description: Main Document
Original filename: n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1004035775 [Date=9/26/2025] [FileNumber=16606082-0]
[4cdcdf4d5504fb806c39f1ddf06b602daa1327015a426eabdf8e6f58eb58d70a68ca3ee82e5af40
aecc1c9e79415140a0f190c58e7212da527bbea662eedbefe]]



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Raymond Parker a/k/a
Connie H.,[1]
Complainant,

v.

Scott Bessent,
Secretary,
Department of the Treasury
(Internal Revenue Service),
Agency.

Appeal No. 2023000200

Hearing No. 450-2019-00324X

Agency No. IRS-18-0720-F

DECISION

On October 12, 2022, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's September 12, 2022, final order concerning him equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

ISSUES PRESENTED

The issues presented are: (1) whether the credibility determinations by an EEOC Administrative Judge (AJ) are supported by the record; and (2) whether substantial evidence supports the AJ's determination that Complainant was

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                    2023000200

not subjected to discrimination based on disability, or denied official time in violation of 29 C.F.R. § 1614.605.

### BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a GS-0512-12 Revenue Agent at the Agency's Small Business/Self Employed Post of Duty (POD) in Farmers Branch, Texas, which is part of the Dallas metro area. Complainant's first-line supervisor was the Group Manager, and his second-line supervisor was the Territory Manager.

Complainant lived in Ardmore, Oklahoma, which was more than 100 miles away from the Farmers Branch POD. On or about January 8, 2017, Complainant accepted a promotion to the GS-12 position in Farmers Branch. According to Complainant, he was unable to sell his house in Ardmore and move closer to Farmers Branch. Prior to his promotion, Complainant worked for the Agency in Ardmore as a GS-11 Revenue Agent. After his assignment to the Farmers Branch POD, Complainant was permitted to telework from his home in Ardmore or the Ardmore POD when he was not performing field work or commuting to Farmers Branch.

The Group Manager's group included the Longview, Texas POD in East Texas in addition to Farmers Branch. On May 23, 2017, the Group Manager sent an email asking if anyone was interested in some audits in Longview, which would include "overnight travel, mileage, and a chance to take in East Texas!" Agency Exhibit 2. On May 23, 2017, Complainant responded, "Yes Please," and noted that he could not even get a renter for his house in Ardmore. Id.

Complainant sustained a back injury while he was in a military and had been diagnosed with lumbar spinal stenosis due to lumbar spondylosis and degenerative disc disease of the lumbar region, thoracic spondylosis with chronic cervical radiculopathy, and diabetes. While working at the Ardmore POD, the Agency had provided Complainant with an ergonomic chair as a reasonable accommodation. In 2017, Complainant said that he would have his movers put the ergonomic chair from the Ardmore POD on the moving truck when he moved closer to Farmers Branch. The record contains a January 30, 2017, email from Complainant to the Group Manager, stating that he had hired some of his brother's employees to help him move when he sold his house and he would have them load his ergonomic chair into the U-Haul. The Group Manager testified that Complainant did not bring up his ergonomic chair between the time in 2017 when he said he would have it put on his moving truck and March 2018. Hearing Transcript (HT) at 500-03.

3                                           2023000200

For the annual rating period from February 1, 2017, to January 31, 2018, Complainant received a performance appraisal with a 3.8 rating, reflecting acceptable performance. The Group Manager testified that, although he noticed issues with Complainant's performance towards the end of the annual appraisal period, he did not lower Complainants annual rating because he would not have given Complainant enough notice to make corrections before the end of the annual appraisal period. HT at 514. On February 22, 2018, the Group Manager began a Formal 4502 workload review of Complainant's work in the Agency's Embedded Quality Review System (EQRS), looking at work completed in the three months prior to the date of the review. On February 27, 2018, the Group Manager emailed Complainant the formal 4502 review, noting comments reflecting that attributes for three critical job elements (CJEs) were rated as fails. Report of Investigation (ROI) at 656. The Group Manager stated that improvement was needed for further evaluations not to be decreased and that Complainant was no longer eligible to telework, so he should plan to come to the Farmers Branch POD when not in the field. On March 7, 2018, the Group Manager met with Complainant to discuss the formal 4502 review. On September 5, 2018, the Group Manager issued Complainant a performance counseling memorandum regarding the decrease in ratings in the formal 4502 review they had discussed on March 7, 2018. ROI at 657-61.

According to Complainant, he injured his back on February 22, 2018, while trying to lift his ergonomic chair that was located at the Ardmore POD into a pickup truck. Complainant filed a worker's compensation claim regarding his back injury. The record reflects that, on February 22, 2018, Complainant worked four hours at the Farmers Branch POD and was on annual leave for four hours and that he was in a duty status February 23, 26, and 27, 2018. Complainant took eight hours of leave each workday from February 28 through March 5, 2018, and returned to work on March 6, 2018. On March 13, 2018, Complainant saw a doctor for the first time for his February 22 back injury, and the notes of the evaluation stated that Complainant "lifted a heavy chair at work last week." ROI at 437. On March 13, 2018, the Group Manager asked Complainant to put in a ticket to move his chair from Ardmore to Farmers Branch. The Group Manager subsequently notified Complainant that he would be picking his chair up on March 15, 2018, and asked if there was anything else Complainant needed from the Ardmore POD.

Complainant was continuously out of work March 12 through June 18, 2018. On May 31, 2018, the Department of Labor issued a decision denying Complainant's worker's compensation claim. On June 11, 2018, the Group Manager issued Complainant a return-to-duty letter. Complainant returned to work on June 19, 2018.

4                                    2023000200

On June 14, 2018, Complainant emailed the Group Manager, asking if he could work credit hours, noting that he had no sick or annual leave and would need time off for medical appointments. On June 14, 2018, the Group Manager responded that he did not see a need for Complainant to work credit hours at that time and that Complainant would need to take leave without pay (LWOP) for medical appointments. Complainant replied on June 18, 2018, that he would file an appeal.

On June 21, 2018, Complainant requested a reasonable accommodation, consisting of an ergonomic keyboard, the ability to use an ice pack and heat pack, and something so he could put his feet up. ROI at 709. Complainant also stated that he was hard of hearing in his right ear, that it was not always possible for him to work in an office setting due to pain, and that he needed more time to get around than others did. Id. On July 3, 2018, Complainant submitted medical documentation, which described his medical restrictions as: (1) unable to walk long distances and limited to walking 200 feet without rest; (2) no squatting/kneeling; (3) no twisting neck and waist; (4) no bending/stooping; (5) no pushing and pulling more than 10 pounds; and (6) no lifting or carrying more than 10 pounds. ROI at 711-12. According to Complainant, forcing him to drive to Farmers Branch violated his medical restrictions.

On July 5, 2018, a Reasonable Accommodation Coordinator emailed the Group Manager, stating that, while Complainant had decided to pursue a hardship transfer to a different POD, they still needed to address assistive technology and his desk. ROI at 556. On July 5, 2018, the Group Manager agreed to accommodate Complainant by providing an ergonomic keyboard and mouse for office and at home, a sound amplifier, and a headset sound card. ROI at 710. The Group Manager agreed to accommodate Complainant with a footstool and by allowing the use of an ice/heat pack that was not electric. According to the Group Manager, Complainant was also offered a flexible or compressed work schedule but declined these options. The Group Manager authorized the purchase of the assistive technology on July 18, 2018, but the record reflects that Complainant did not respond to emails on July 22 and July 26, 2018, informing him that his concurrence was needed to process the request. ROI at 551-54. According to an August 9, 2018, email, the assistive technology shipped on August 3 and 8, 2018. ROI at 714.

On August 5, 2018, Complainant submitted a hardship transfer request, requesting to transfer to the Ardmore or Tulsa, Oklahoma PODs for medical reasons, which the Group Manager approved on July 5, 2018. ROI at 630-34.

2023000200

On August 31, 2018, a Hardship Reassignment Coordinator in the Agency's Human Capital Office sent Complainant a letter stating that his hardship relocation application had been approved. The letter stated that approval of his application did not mean that he had a job placement offer but that he would be considered for future vacancies in his desired post of duty with the status of hardship eligible. On December 18, 2018, the Director gave final approval for a permanent hardship transfer for Complainant. On January 29, 2019, Complainant agreed to report to the Tulsa POD on March 4, 2019.

On August 31, 2018, Complainant submitted a telework request to the Group Manager, and, on September 5, 2018, the Group Manager denied Complainant's request for telework, stating that his eligibility would be reevaluated in November. ROI at 653. As a result of the denial, Complainant was required to take LWOP to attend medical appointments. On November 19, 2018, the Group Manager emailed Complainant a workload review, noting that some CJEs had increased and some had decreased. ROI at 662. The Group Manager stated that, overall, Complainant was meeting all CJEs and would be allowed to start teleworking again. ROI at 662.

Complainant initiated contact with an EEO counselor on July 9, 2018. According to Complainant, he spoke with an EEO counselor on July 20, 2018. Complainant stated that he was charged eight hours of LWOP for July 20, 2018, instead of being granted official time to meet with the EEO counselor.

On October 18, 2018, Complainant filed a formal EEO complaint alleging that:

1.  The Agency discriminated against him on the basis of disability (physical) when:
    a. Management refused to allow him to work credit hours beginning on or around June 14, 2018;
    b. Management failed to respond to his July 3, 2018, request for reasonable accommodation, which Complainant alleges amounted to a denial of reasonable accommodation;
    c. Management charged him LWOP when he was out of the office for medical reasons on or around August 3, 2018; and
    d. Management failed to transfer him immediately after approving his hardship transfer request on August 22, 2018.

2.  The Agency denied him official time in violation of 29 C.F.R. § 1614.605.

6                                    2023000200

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of him right to request a hearing before an EEOC AJ. The AJ assigned to the case held a hearing on June 27-29, 2022.

On August 23, 2022, the AJ issued a Bench Decision in Favor of the Agency and Order Entering Judgment in Favor of the Agency. The AJ found that Complainant's testimony was not credible. According to the AJ, there were several instances in which Complainant contradicted himself or the facts clearly established in the record. The AJ also found that, at times, Complainant was unnecessarily evasive and combative over simple questions. The AJ found the testimony of the Group Manager and the Territory Manager to be credible.

The AJ determined that, after reviewing the evidence and assessing the credibility of the witnesses, Complainant failed to establish a prima facie case of discrimination or demonstrate pretext. Regarding credit hours, Complainant worked more credit hours than any other employee supervised by the Group Manager in 2018 and therefore could not show he was treated less favorably than other similarly situated employees. Complainant was not eligible to work credit hours when he returned to work in June 2018 because there was no business need to do so while he was working a reduced inventory. The AJ found that Complainant did not provide any evidence that the Agency's legitimate, nondiscriminatory reason was pretextual.

The Agency granted Complainant's request for specialized equipment as a reasonable accommodation. The AJ determined that Complainant's reasonable accommodation requests did not include a request to telework and that there was no medical documentation in the record that supported a need for telework. The AJ found that Complainant's request for telework was more likely attributable to the fact that Complainant lived in Ardmore and did not like the long drive to Farmers Branch or the Dallas area traffic. According to the AJ, even if Complainant had requested full-time telework as a reasonable accommodation, the Agency was not obligated to grant the request. The Group Manager removed all employees from telework who were not performing at a satisfactory level. The AJ determined that field work, which involved travelling to customers' place of business, was an essential function of the job. The AJ further found that, if the denial of reasonable accommodation was considered as a disparate treatment claim, Complainant could not establish a prima facie case of discrimination or establish that the Agency's proffered reasons for denying telework were a pretext for unlawful discrimination.

Regarding Complainant's claim that he was required to use LWOP for medical appointments, it was undisputed that Complainant had exhausted all accrued annual leave and sick leave as well as advanced annual leave and sick leave. The AJ also noted that LWOP itself was not an entitlement. The AJ found that Complainant failed to state a claim of discrimination with respect to this claim.

The AJ found that Complainant could not establish discriminatory animus with respect to his request for a hardship transfer because the Group Manager and the Territory Manager approved and forwarded Complainant's request immediately upon receipt, and Complainant did not claim that anyone else was a responsible management official. According to the AJ, the Group Manager and the Territory Manager provided testimony that the time it took for a hardship transfer request to be approved depended on the duty position and the desired location, and they provided reasons for the delay. The AJ found that Complainant failed to present any evidence that the Agency's legitimate, nondiscriminatory explanation for the delay was pretextual.

Finally, regarding Complainant's claim that he was denied official time to speak with an EEO counselor, Complainant testified that he did not remember when he spoke with an EEO counselor, with whom, or for how long. The AJ determined that Complainant therefore failed to establish a prima facie case of denial of official time. While the record reflected that Complainant spoke with an EEO counselor on July 20, 2018, the AJ stated that there was no evidence that Complainant notified the Group Manager in advance or made a request for official time. Complainant's timecard reflected eight hours of LWOP for July 20, 2018, although Complainant testified that he was at the Farmers Branch POD that day. The AJ found that it was not plausible that, if Complainant drove to the Farmers Branch POD, he would code his time as LWOP for the entire workday.

The Agency subsequently issued a final order fully implementing the AJ's finding that Complainant failed to prove that the Agency subjected him to discrimination as alleged. The instant appeal followed.

## CONTENTIONS ON APPEAL

On appeal, Complainant contends that the AJ improperly weighed credibility evidence in favor of the Agency. According to Complainant, there is sufficient evidence to support a prima facie case of discrimination based on disability, and the AJ improperly found in favor of the Agency because he showed the Agency's proffered legitimate, nondiscriminatory reasons were pretext for discrimination.

Complainant also argues that he established that he was denied a reasonable accommodation and that his requested accommodation would not have presented an undue hardship. Complainant maintains that the AJ improperly dismissed his claim regarding the denial of official time, arguing that there is no evidence in the record that Complainant requested LWOP for July 20, 2018.

In response to Complainant's appeal, the Agency contends that Complainant simply disagrees with the AJ's findings of facts and legal analysis and reargues his version of facts that were rejected by the AJ based on the preponderance of the credible evidence.

## STANDARD OF REVIEW

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. See Pullman-Standard Co. v. Swint, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a de novo standard of review, whether or not a hearing was held.

An AJ's credibility determination based on the demeanor of a witness or on the tone of voice of a witness will be accepted unless documents or other objective evidence so contradicts the testimony, or the testimony so lacks in credibility that a reasonable fact finder would not credit it. See EEOC Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chap. 9, at § VI.B. (Aug. 5, 2015).

## ANALYSIS

The AJ did not find Complainant to be a credible witness. The AJ found that, at times, Complainant was unnecessarily evasive and combative over simple questions. The AJ cited as an example Complainant disagreeing that he received the EQRS review approximately one month after the end of his annual performance appraisal period. HT at 217-18. According to the AJ, it was undisputed that Complainant's rating period ended January 31, 2018, and that the EQRS review was dated February 27, 2018.

The AJ also found that Complainant's testimony was not credible because he contradicted himself or contradicted clearly established facts.

9                                   2023000200

According to the AJ, Complainant testified that he was "coerced" into taking assignments in Longview when the record showed that Complainant willingly volunteered for the assignments. On appeal, the Agency asserts that the AJ correctly interpreted Complainant's testimony, which was that he was "very pressured" into taking the assignments in Longview because he did not want to "get off on the wrong foot" with his new boss. HT at 153. While Complainant testified he felt "very pressured" to take the assignments rather than "coerced," he has not addressed that testimony regarding feeling pressured to accept the assignments is contradicted by evidence in the record that Complainant willingly accepted the Longview assignments, which included mileage and overnight travel.

Complainant testified that he was not permitted to disclose the true nature of the injuries he sustained in the military, which was why he told his treating physician he was injured in a truck accident. However, Complainant provided a different explanation in his reasonable accommodation request, stating that he was injured by helicopters. The AJ found that it was inexplicable and unpersuasive that someone would disclose the "true" nature of their injuries as part of a reasonable accommodation request and not to their treating physician. According to Complainant, these injuries were sustained during a classified Top Secret mission, and he was instructed that he could not talk about the true nature of his injuries. On appeal, Complainant argues that the fact that he said he was injured by helicopters in his reasonable accommodation request rather than using the faux narrative about the truck from his military record spoke positively to Complainant's credibility "to uphold government secrets pursuant to his security clearance." However, Complainant does not explain why he disclosed that he was injured by helicopters in his reasonable accommodation request if he thought he was not permitted to discuss the details regarding his injury, nor does he explain how the differing explanations enhance his credibility as a witness.

Upon review, we accept the AJ's credibility determinations.

In order to prove his complaint of employment discrimination, a complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Complainant must initially establish a prima facie case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 804 n. 14.

10                                    2023000200

The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Thereafter, to ultimately prevail, complainant must prove, by a preponderance of the evidence, that the agency's explanation is pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993).

To establish a prima facie case of disparate treatment discrimination based on disability, a complainant generally must prove the following elements: (1) they are an individual with a disability as defined in 29 C.F.R. §§ 1614.203(a) and 1630.2(g); (2) they are "qualified" as defined in 29 C.F.R. §§ 1614.203(a) and 1630.2(m); (3) the agency took an adverse action against them; and (4) there was a causal relationship between their disability and the agency's actions. See Annamarie F. v. Dep't of the Air Force, EEOC Appeal No. 2021004539 (Aug. 17, 2023).

An agency is required to make reasonable accommodation to the known physical and mental limitations of an individual with a disability unless the agency can show that accommodation would cause an undue hardship. 29 C.F.R. §§ 1630.2(o) and (p). In order to establish that he was denied a reasonable accommodation, Complainant must show that: (1) he is an individual with a disability as defined by 29 C.F.R. § 1630.2(g); (2) he is "qualified" as defined by 29 C.F.R. § 1630.2(m); and (3) the Agency failed to provide a reasonable accommodation. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Enforcement Guidance on Reasonable Accommodation), No. 915.002 (Oct. 17, 2002).

It is undisputed that Complainant is an individual with a disability. For the purposes of analysis, we will assume that Complainant was "qualified" with respect to his Revenue Agent position.

Complainant alleged discrimination with respect to being denied the opportunity to work credit hours in June 2018. Complainant is an individual with a disability, we assume that he was qualified, and he was subjected to an adverse action when he was told he could not work credit hours in June 2018. However, Complainant has not established a prima facie case of discrimination because he has not identified evidence connecting the inability to work credit hours and his disability.

Moreover, the Agency's legitimate, nondiscriminatory explanation was that there was no business need for Complainant to work credit hours as he returned from leave and was provided a lighter workload with cases in stages where such a need was unlikely to arise. The Agency's policy was that credit hours could be worked if there was a business need to extend the workday for an hour or two to complete a task.

As evidence of pretext, Complainant contends that he needed to work credit hours because of his disability, as he had exhausted his paid leave. While it certainly would have been beneficial for Complainant to be able to earn credit hours so he would not need to take LWOP for medical appointments, he does not address the Agency's explanation that there was no business need for him to work credit hours, nor has he shown that it was pretext. Moreover, although Complainant was on extended leave and was not eligible to work credit hours immediately upon his return from leave, the record shows that Complainant still worked more credit hours than any other employee supervised by the Group Manager in 2018. The AJ's finding that Complainant did not establish discrimination with respect to this claim is supported by substantial evidence.

Complainant alleged that the Agency failed to respond to his reasonable accommodation request, which amounted to a denial, but the record reflects that the Agency approved Complainant's request for assistive technology, a footstool, and to use heat/ice packs. Complainant argues that he was denied telework as a reasonable accommodation. The AJ found that Complainant did not request telework as a reasonable accommodation and that his medical documentation did not support the need for telework as an accommodation. As the AJ observed, Complainant's reasonable accommodation request and medical documentation discussed medical restrictions that did not implicate the need for telework as an accommodation. The Agency is required to make reasonable accommodation to the known physical and mental limitations of an individual with a disability, and the record does not show that the Agency knew about a physical or mental limitation for which telework would be a reasonable accommodation. Accordingly, we find that the AJ's finding that Complainant has not established he was denied a reasonable accommodation is supported by substantial evidence of record.

Analyzing this claim as a disparate treatment claim, Complainant is an individual with a disability, we assume that he was "qualified," and he was subjected to an adverse action when he was removed from telework on February 27, 2018, and when his August 31, 2018, request for telework was denied.

However, Complainant cannot establish a prima facie case of discrimination because he has not identified a causal relationship between his disability and the denial of telework. Even if we were to assume a prima facie case of discrimination, the Agency provided a legitimate, nondiscriminatory for its actions. The Agency removed Complainant from telework when the formal 4502 review showed that his performance was below satisfactory in attributes of three CJEs and denied his August request for telework because he had not demonstrated improved performance.

As evidence of pretext, Complainant argues that his request for telework was due to his medical condition. According to Complainant, he had exhausted his paid leave and wanted to telework so he would not need to take eight hours of LWOP when he had doctor's appointments. However, this argument does not address the Agency's legitimate, nondiscriminatory reason or show pretext. The Agency identified two similarly situated comparators who were temporarily removed from telework based on performance. Moreover, the record shows that Complainant was allowed to resume telework in November 2018 after his performance improved. Substantial evidence in the record supports the AJ's determination that Complainant did not establish that he was subjected to disparate treatment.

Complainant alleged that he was subjected to discrimination when he was required to use LWOP for medical appointments. The AJ found that this failed to state a claim of discrimination. We will assume for the purposes of analysis that providing Complainant with LWOP for his medical appointments constituted an adverse action. However, Complainant still cannot establish a prima facie case of discrimination by linking the adverse action to his disability. The Agency's legitimate, nondiscriminatory reason for providing Complainant with LWOP for his medical appointments rather than paid leave was that he had exhausted his accrued annual leave, accrued sick leave, the maximum amount of advanced annual leave, and the maximum amount of advanced sick leave. Complainant has not identified any similarly situated employee who was favorably than he was or otherwise established pretext. Accordingly, Complainant cannot establish that he was subjected to discrimination as alleged in this claim.

Complainant alleged that the Agency subjected him to discrimination based on disability when the Agency delayed transferring him after approval of his hardship transfer request on August 22, 2018.

13                                    2023000200

The August 31, 2018, letter from the Hardship Reassignment Coordinator explained that Complainant's hardship application had been approved and that his hardship status would be effective for one year, but that did not mean that his transfer had been approved or constitute a job offer. Complainant's hardship transfer was approved on December 18, 2018, and he reported to the Tulsa POD on March 4, 2019. Even if we were to assume that the delay in approval for Complainant's transfer or in his report date constituted an adverse action, Complainant cannot establish a prima facie case of discrimination because he has not shown a connection between the delay and his disability. The Agency explained that final approval for the transfer was based on the position, the desired location, and HCO's determination regarding the availability of work and the availability of space. Moreover, part of the delay between the approval of Complainant's hardship transfer and his reporting date was the 35-day government shutdown in December 2018 and January 2019.

As evidence of pretext, Complainant contends that there was no reason for the transfer to take longer than 15 to 30 days. However, a hardship transfer was not guaranteed, and there is no evidence that such a transfer was approved in 15 to 30 days. According to the record, it took 241 days for Complainant to be transferred, 174 days for the Group Manager to be transferred,[2] and 159 days for another comparator in the Territory to be transferred. Complainant Exhibit 1 at 7. Complainant notes that, even excluding 35 days for the government shutdown, his transfer took approximately 32 days longer than the Group Manager's and 47 days longer than the other comparator's.

The Territory Manager testified that it was easier to facilitate a transfer from one non-bargaining unit position to another because the Agency did not need to conduct the same workload and space analysis needed for a bargaining unit position. HT at 437-38. According to the Territory Manager, the other comparator was a Revenue Agent who requested an in-state hardship transfer from Monroe, Louisiana to Baton Rouge, Louisiana. HT at 439-42.

We find that Complainant has not shown that the additional time it took for his hardship transfer as compared to the Group Manager and the other comparator constitutes evidence pretext.

---

[2] On June 18, 2018, the Group Manager requested a hardship transfer to Anchorage, Alaska, Tacoma, Washington, Seattle, Washington, or Everett, Washington in order to be closer to his aging parents. The effective date of the Group Manager's transfer was December 9, 2018.

14                                    2023000200

As additional evidence of pretext, Complainant contends that the Agency was aware of his disability while his hardship transfer was pending. However, the Agency's knowledge that the basis for requesting a hardship transfer based on his medical needs does not constitute evidence of disability-based animus. The AJ's conclusion that Complainant failed to present any evidence that management's legitimate, nondiscriminatory explanation for the delay between the submission of his request, the approval of his hardship application, the approval of his transfer request, and when he was ultimately transferred was a pretext designed to mask discriminatory animus.

Finally, Complainant alleged that he was denied official time. EEOC regulation 29 C.F.R. § 1614.605(b) states, in relevant part, "If the complainant is an employee of the agency, he or she shall have a reasonable amount of official time, if otherwise on duty, to prepare the complaint and to respond to agency and EEOC requests for information." The Commission has stated that a claim regarding the denial of official time concerns a violation of the Commission's regulation and does not require a determination of whether the denial was motivated by discrimination. See Edwards v. U.S. Postal Serv., EEOC Request No. 05960179 (Dec. 23, 1996). The Commission held that such a claim should not be processed in accordance with 29 C.F.R. 1614.108 et seq., since the focus is not on the motivation, but rather on the justification of why the complainant was denied a reasonable amount of official time. Edwards, EEOC Request No. 05960179.

As the AJ found, Complainant testified that he was unsure when he spoke with an EEO counselor, who the EEO counselor was, or for how long he spoke with the EEO counselor. In order for the Agency to deny a request for official time, Complainant must first request official time. Complainant has not identified any evidence showing that he informed the Group Manager that he was speaking with an EEO counselor or that he requested official time in order to speak with the EEO counselor. We agree with the AJ that Complainant has not shown that he was denied a reasonable amount of official time to speak with the EEO counselor.

Upon careful review of the AJ's decision and the evidence of record, as well as the parties' arguments on appeal, we conclude that the AJ correctly determined that the preponderance of the evidence did not establish that Complainant was discriminated against by the Agency or denied official time as alleged.

15                                    2023000200

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final order implementing the AJ's decision.

### STATEMENT OF RIGHTS - ON APPEAL
### RECONSIDERATION (M0425)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

    1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
    2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit their request for reconsideration, and any statement or brief in support of their request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx. Alternatively, Complainant can submit their request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

16                                      2023000200

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files their request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(f).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0124)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by their full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

17                                    2023000200

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:


Carlton M. Hadden, Director
Office of Federal Operations


May 27, 2025
Date

Raymond Parker

17200 South Male Drive

Kellyville OK 74039


Department of the Treasury
Director, Office of Civil Rights and Diversity
1500 Pennsylvania Avenue NW
Washington, DC 20220



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

TO:    Raymond Parker

FROM:  Rebecca Lewis

## NOTICE OF RIGHT TO FILE A DISCRIMINATION COMPLAINT

On  07/09/2018          , you contacted an EEO Official to initiate the EEO pre-complaint process during which you alleged: (if additional space is required, use a blank sheet)

see attachment

This is to inform you that, because the matters brought to our attention have not been resolved, you are now entitled to file a formal discrimination complaint with the Department of Treasury.

If you wish to file a formal complaint, it must be in writing, signed by you or your representative (if designated), and filed within **fifteen (15) calendar days after receipt of this Notice.** The complaint form and instructions for filing are available at: http://www.treasury.gov/about/organizational-structure/offices/Mgt/Pages/discrimination-complaint.aspx

If you did not contact and EEO Official within 45 days from the date of the matter you allege to be discriminatory, or if you do not file the formal complaint within 15 calendar days of receipt of this Notice, please attach to your complaint an explanation of why you did not meet the time requirements. The Department will evaluate this information when deciding whether to accept your complaint for investigation.

If you are an employee of the Department of the Treasury, all correspondence will be e-mailed to your official e-mail address (unless you designate otherwise) and to the e-mail address of any representative.

If you believe you were subjected to prohibited age discrimination (40 years of age and older), as an alternative to filing a complaint under the Equal Employment Opportunity Commission regulations, you may file a civil action in an appropriate U.S. District Court under the Age Discrimination in Employment Act against Steven Mnuchin, Secretary of the Treasury, provided that you inform the EEOC of your intent to sue at least 30 calendar days in advance of filing suit.  Such notice must be filed in writing with EEOC, at P.O. Box 77960, Washington, DC  20013, or by personal delivery of facsimile within 180 days of the occurrence of the alleged unlawful practice.

If you are filing on the basis of sexual orientation (LGBT), you may also elect to file with the Office of Special Counsel (www.osc.gov).

I certify that I transmitted this notice on        10/03/2018        by the method specified below.

This notice was transmitted by:    ☑ e-mail

cc:

☐   certified mail number:

☐   hand delivery

**42WNB**  Digitally signed by 42WNB
Date: 2018.10.18 15:31:10
-05'00'

Complainant's Signature

EEO Counselor's signature:    **H50DB**  Digitally signed by H50DB
Date: 2018.10.03
10:24:36 -06'00'

Form No. TDF 62-03.5 *(11/12/2015 Edition)*



**INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION WITH THE DEPARTMENT OF THE TREASURY**

For Office Use Only:

Department Formal Case Number

Filing Date

## PART I: COMPLAINANT IDENTIFICATION

**1. Name**

| Last Name | First Name | Middle Initial |
|---|---|---|
| Parker | Raymond | T. |

**2. Primary Contact Number (Include Area Code)**

| Phone | |
|---|---|
| 918-527-7762 | Best Time to Call: ○ Morning   ○ Afternoon   ⊙ Evening |

**3. Preferred Email Address**

Email
rayray_73160@yahoo.com

**4. Home Address (You must notify the Department of any changes of address or your complaint may be dismissed. Send updated information to: Office of Civil Rights and Diversity, Department of the Treasury, 1500 Pennsylvania Avenue NW, Washington, DC 20220.)**

| Street Address | City | State | ZIP |
|---|---|---|---|
| 17204 South Maple Drive | Kellyville | OK | 74039 |

**5. If you are a current or former employee of the Federal government, list your most recent title, series, and grade.**

| Title | Series | Grade |
|---|---|---|
| Revune Agent | 0512 | GS-12 |

**6. Name and Address of Organization Where You Work (if a Treasury Employee)**

| Bureau and Business Unit | Office and Organizational Component |
|---|---|
| Department of Treasury Internal Revenue Service SBSE | Small Busi8ness and Self Employed |

| Street Address | City | State | ZIP |
|---|---|---|---|
| 4050 Alpha Road | Farmers Branch | TX | 75244 |

**7. Employment Status in Relation to this Complaint:**

○ Applicant   ○ Probationary   ⊙ Career/Career Conditional

○ Former Employee   ○ Retired   ○ Other: _____

Date Left Treasury Employment *(if applicable)*
N/A

## PART II: DESIGNATION OF REPRESENTATIVE

**8. You may represent yourself in this complaint or you may choose someone to represent you. Your representative does not have to be an attorney. You may change your designation of a representative at a later date, but you must notify the department immediately in writing of any change, and you must include the same information requested in this Part.**

"I hereby designate _____ Raymond T. Parker _____ (Please Print Name) to serve as my representative during the course of this complaint. I understand that my representative is authorized to act on my behalf."

**9. Representative's Mailing Address**

| Firm / Organization | | | |
|---|---|---|---|
| Myself at this time. | | | |

| Street Address | City | State | ZIP |
|---|---|---|---|
| 17200 South Maple Drive | Kellyville | OK | 74039 |

**10. Representative's Employer (If Federal Agency)**

Employer
Department of Treasury IRS SBSE

**11. Representative's Telephone/Email Address**

| Phone | Email |
|---|---|
| 918-527-7762 | rayray_73160@yahoo.com or raymond.parker@irs.gov |

## PART III: ALLEGED DISCRIMINATORY ACTIONS

**12.** Name and Address of Treasury Bureau that took the action at issue (if different than item 6.)

| Bureau and Business Unit | | Office and Organizational Component | |
|---|---|---|---|
| Same as 6 | | | |
| Street Address | City | State | ZIP |

**13.** If you complaint involves nonselection for a position, please complete the below information. If you wish to allege more than one nonselection, list the same information for each additional nonselection under number 14.

| Position | | Series | Grade |
|---|---|---|---|
| Vacancy Announcement Number | | Date Learned of Nonselection | |

**14.** (A) Describe the action taken against you that you believe was discriminatory; (B) Give the date when the action occurred, and the name of each person responsible for the action; (C) Describe how you were treated differently than other employees or applicants; (D) Indicate what harm, if any, came to you in your work situation as a result of this action. (Evidence in support of your claim(s) should be provided to the investigator at a later stage. If you require more space to describe your allegations, please attach an additional page(s) to this form upon submission.)

I feel management is retaliating because I filed workers comp and the fact that I am 100 percent disabled veteran of the Armed Services.

Discriminated on based on VA Disability and or just being a veteran: Management has done the following:
Refused  Telework other Revenue Agent (RA)'s with lower rating are allowed this has cost me 10s of thousands of dollars. I have had to borrow money to eat.
Made me drive 108 miles for a 5 minute meeting when other agents were allowed to call in.
Not allowed credit hours this increases time missed from work.
Not allowed to do hard ship relocation, they say I can however, I have been trying for years.
Made to take Leave With Out Pay LWOP to go to EEO meeting, doctors office, any other things I do.
Have to walk in the rain further because management will not let me use the disability door.

All of the stress of the above has added to my health issues I already had like: Entire back (I had a total head to butt spine cord injury) pain, neck pain, feet, right leg, both knees, hips, shoulder, sores in skin are made worse, head aches much worse than before, as is stress, anziety, insomnia some days I go 72 hours without sleep even thought I try to get to sleep and heart problems. I think all the additional stress of not getting paid some times less than half what I am suppose to make. I have had pay checks that are less than $700.00 for two weeks.  I am out of leave because of the workers comp claim. I was to sick to get everything filed and could not get help.

Management has increased by pain a lot; because the above issues so for resolution
Out of Dallas with a different Territory management and different Group Manager.
Pay me back all of the LWOP
Write off all the sick leave and annual leave I owe; because I have not been at work enough to get it paid back because of the long walk.
Make them ahear to the Reasonable Acumination the doctors have filled out and Management has ignored for the last 4 months. Give me back my leave I had at the first of the year.

**15. Mark below ONLY the bases you believe were relied on to take the actions described in #14.**

| | |
|---|---|
| ☐ Age (Date of Birth:     ) | ☐ National Origin (Specify:     ) |
| ☐ Race (State Race:     ) | ☑ Disability |
| ☐ Color (State Color:     ) | ☐ Protected Genetic Information |
| ☐ Religion (State Religion:     ) | ☐ Retaliation/Reprisal |
| ☐ Sex ( ☐ Male ☐ Female) |     (Date of Prior EEO Activity:     ) |
| ☐ Sex–Pregnancy    ☐ Sex–LGBT | ☐ Parental Status |

**16. What remedial or corrective action are you seeking to resolve this matter?**

Paid back for all the LWOP allowed to teliwork  I think they should have to pay enough to change it

## PART IV: CONTACT

**17. When did the *most recent* discriminatory event occur?**

Date of Most Recent Event
10-15-2018 it has not stopped or even slowed down.

**18. When did you first become aware of the alleged discrimination?**

Date of Awareness
6-19-2018    7-3-18 GM and TM ignored doctors orders when I gave them a copy of RA Request

**19. When did you contact an EEO Counselor?**

Date of EEO Contact
Rebecca E. Lewis, EEO Specialist – Counselor was assigned on 7-24-2018

| Name of EEO Counselor | EEO Counselor Phone or Email |
|---|---|
| Rebecca Lewis | 801-620-6386 |

**20. Did you discuss all actions raised in item 14 with an EEO Counselor?**

⊙ Yes ○ No     (If no, please explain)

**21. When did you receive your Notice of Right to File?**

Date Recieved Notice
10-03-2018

**22. If you contacted an EEO Counselor more than 45 days after the most recent alleged discriminatory event, or if you are filing this form more than 15 days after receiving the Notice of Right to File, please provide an explanation for the delay below and attach additional supporting documentation if necessary.**

Within the 15 days.

**23. On this same matter, have you filed a grievance or appeal under:**

| | |
|---|---|
| Negotiated grievance procedure | ○ Yes ⊙ No |
| Agency grievance procedure | ○ Yes ⊙ No |
| MSPB appeal procedure | ○ Yes ○ No |

If you filed a grievance or appeal, provide date filed, case number, and present status.

| Date Filed | Case Number | Present Status |
|---|---|---|
| | IRS-18-720 RP | Closed |

## PART V: SIGNATURE

**24. I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief.**

| Signature of Complainant or Attorney Representative | | Date |
|---|---|---|
| 42WNB | Digitally signed by 42WNB Date: 2018.10.16 01:15:32 -05'00' | 10-18-2018 |

Raymond Parker
17200 South Male Drive
Kellyville OK 74039


Department of the Treasury
Director, Office of Civil Rights and Diversity
1500 Pennsylvania Avenue NW
Washington, DC 20220


Discriminated on based on VA Disability and or just being a veteran: Management has done the following:
Refused  Telework other Revenue Agent (RA)'s with lower rating are allowed this has cost me 10s of thousands of dollars. I have had to borrow money to eat.
Made me drive 108 miles for a 5 minute meeting when other agents were allowed to call in.
Not allowed credit hours this increases time missed from work.
Not allowed to do hard ship relocation, they say I can however, I have been trying for years.
Made to take Leave With Out Pay LWOP to go to EEO meeting, doctors office, any other things I do.
Have to walk in the rain further because management will not let me use the disability door.

All of the stress of the above has added to my health issues I already had like: Entire back (I had a total head to butt spine cord injury) pain, neck pain, feet, right leg, both knees, hips, shoulder, sores in skin are made worse, head aches much worse than before, as is stress, anziety, insomnia some days I go 72 hours without sleep even thought I try to get to sleep and heart problems. I think all the additional stress of not getting paid some times less than half what I am suppose to make. I have had pay checks that are less than $700.00 for two weeks. I am out of leave because of the workers comp claim. I was to sick to get everything filed and could not get help.

Management has increased by pain a lot; because the above issues so for resolution
Out of Dallas with a different Territory management and different Group Manager.
Pay me back all of the LWOP
Write off all the sick leave and annual leave I owe; because I have not been at work enough to get it paid back because of the long walk.
Make them ahear to the Reasonable Acumination the doctors have filled out and Management has ignored for the last 4 months.
Give me back my leave they made me use for going to the doctor.



**U.S. DEPARTMENT OF THE TREASURY**
**INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION FORM INSTRUCTIONS**
**TDF 62-03.5 (REV. 11/2015 EDITION)**

**(Read the following instructions carefully before you complete this form)**
**(Please complete all items on the complaint form)**

<u>GENERAL</u>: This form is to be used to file a formal complaint of discrimination if you are an applicant for employment with the Department of the Treasury, or a present or former Department of the Treasury employee and:

1) believe you have been discriminated against because of your **race, color, religion, sex (including pregnancy or LGBT), national origin, age** (40 years or older at the time of the event giving rise to your claim), **disability, protected genetic information**, or in **reprisal** for opposition to activities protected by civil rights statutes or participating in the EEO process, <u>or</u>

2) believe you have been discriminated against because of your **parental status**. Your claim is not covered under a statutory basis, but will be processed under a parallel procedure.

   **IMPORTANT NOTE**: In certain situations, the information provided in Part III of the attached complaint form may be used in lieu of an affidavit in the investigation of your complaint. Accordingly, the information you provide in this part should be brief, clear, and complete.

<u>WHEN TO FILE</u>: In accordance with 29 CFR 1614.106, your formal complaint must be filed **within 15 calendar days** of the date you received the Notice of Right to File a Discrimination Complaint form from your EEO Counselor. You must sign and date your complaint. If you are represented <u>**by an attorney**</u>, the attorney may sign the complaint on your behalf.

This time limit may be extended:

1) if you show that you were not notified of the time limits and were not otherwise aware of them, or

2) if you were prevented by circumstances beyond your control from submitting the matter within the time limit, or

3) for other reasons considered sufficient by the Department.

<u>REPRESENTATION</u>: You may have a representative of your own choosing at all stages of the processing of your complaint. However, your representative will be disqualified if such representation would conflict with the official or collateral duties of the representative. No EEO Counselor, EEO Investigator or EEO Officer may serve as a representative. (*Your representative need not be an attorney, but only an attorney representative may sign the complaint on your behalf.*)

<u>WHERE TO FILE</u>: In accordance with 29 CFR 1614.106(c), your written complaint must be signed by you or your attorney. The complaint should be filed with the Department of the Treasury. (Filing instructions are contained in the "Notice of Right to File" letter, which was provided by your EEO Counselor.) Keep a copy of the completed complaint form for your records.

## PRIVACY ACT STATEMENT

1. <u>FORM NUMBER/TITLE/DATE</u>: Department of the Treasury Form Number TDF 62-03.5, Individual Complaint of Employment Discrimination with the Department of the Treasury (10/15 Edition).

2. <u>AUTHORITY</u>: 42 USC § 2000e; 29 USC § 633a; PL 95-062, as amended; 5 USC §§ 1303-1304; 5 CFR § § 5.2-5.3; 29 CFR §§ 1614.105, .107; Executive Order 11478, as amended; Executive Order 13145; and Executive Order 13152.

3. <u>PRINCIPAL PURPOSES</u>: The purpose of this complaint form, whether recorded initially on the form or taken from a letter from the Complainant, is to record the filing of a formal written complaint of employment discrimination with the Department of the Treasury on the grounds of race, color, religion, sex (including pregnancy or LGBT), national origin, age, disability, protected genetic information, parental status, or retaliation. Information provided on this form will be used by the Department of the Treasury to determine whether the complaint was timely filed and whether the allegations in the complaint are within the purview of 29 CFR Part 1614, or the Executive Orders listed in item 2 above, to provide a factual basis for investigation of the complaint, and to reach a decision on the complaint. This form may also be used to record an amendment request or additional evidence for an open, pending complaint.

4. <u>ROUTINE USES</u>: Other disclosures may be:

   a. to respond to a request from a Member of Congress regarding the status of the complaint or appeal;

   b. to respond to a court subpoena and/or to refer to a district court in connection with a civil suit;

   c. to disclose information to authorized officials or personnel to adjudicate a complaint or appeal; or

   d. to disclose information to another Federal agency or to a court or third party in litigation when the Government is party to a suit before the court.

5. <u>WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY, AND EFFECT ON INDIVIDUAL BY NOT PROVIDING INFORMATION</u>: Formal complaints of employment discrimination must be in writing, signed by the Complainant (or attorney representative), and must identify the parties and action or policy at issue. Failure to comply may result in the Department of the Treasury dismissing the complaint. It is not mandatory that this form be used to provide the requested information.

## DETACH AND KEEP THIS PAGE WHEN YOU FILE YOUR COMPLAINT.

# Reasonable Accommodation Request

**Part III-A  –  Medical Documentation** *(A Separate Attachment May Be Submitted If Additional Space Is Needed)*

To be completed by a Health Care Practitioner, Social Worker, or Rehabilitation Counselor

Name of Applicant/Employee

Raymond T. Tarter

**Instructions**

We have been requested to consider a reasonable accommodation for the individual named above. An accommodation is a modification made to a job and/or the work environment that enables a qualified employee/applicant with a disability to successfully perform the essential duties or functions of the position. We request that you provide medical information which reflects:

- that the individual has one or more physical or mental impairment that substantially limit(s) one or more of his/her major life activities (e.g., walking, speaking, breathing, hearing, seeing, thinking, sitting, standing, reaching, interacting with others, learning, performing manual tasks, caring for oneself, concentrating, lifting, working, sleeping)

- that there is a relationship between the limiting medical condition(s) and the recommended accommodations.

**Medical Documentation**
**For your information, a copy of the appropriate job description is attached.**

1. Have you made a diagnosis that relates to this reasonable accommodation request? Please state the diagnosis. *(If additional space is needed, please attach a separate sheet.)*

Chronic Neck Pain   M.54.2   G89.29
Cervical Radiculopathy M 54.12
Spondylosis of Thoracic region. M 47.814
Lumbar Spondylosis. M 47.816
Subjective Memory Complaints. R41.89

2. Please explain the impact of this medical condition on major life activities. *(i.e. describe what limitations result from this condition, and address any workplace safety concerns that may result from the condition, fill out Part III-B).*

Unable to walk long distances, climb stairs, bend, lift or squat without experiencing pain. Currently under care of pain management, Dr. A Savage, MD, in Ardmore for spinal injections. Was seen in my clinic on 7/2/18 by Dr. J Rother, MD and referral was made for orthopedic surgery.

3. What is the anticipated duration of this medical condition

- Permanent without surgical intervention or treatment. Unknown level of impact on medical condition of major life activities once completed.

| **Certification** | | |
|---|---|---|
| Name of Health Care Practitioner, Social Worker, Rehabilitation Counselor<br>Jennifer Hicks, APRN CNP | Telephone number<br>580.224-2800 | Best Method and time to contact<br>Phone– 11:30–12:00 |
| I understand that an IRS medical consultant may contact me for additional information. | | |
| Signature<br>*[signature]* C\P | | Date signed<br>7-3-18 |

# Reasonable Accommodation Request

**Part III-B** – Medical Documentation (Limitations Worksheet) *(A Separate Attachment May Be Submitted If Additional Space Is Needed)*

To be completed by a Health Care Practitioner, Social Worker, or Rehabilitation Counselor

Name of Applicant/Employee

Raymond T. Parker

Instructions

1. The following table indicates the major life activity that is affected by the applicant/employee's medical condition. Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty.

2. Indicate only the major activity affected by the applicant / employee's medical condition by circling or checking the appropriate block. Indicate the specific limitation of the applicant / employee resulting from their condition. Quantify their limitation in order for the agency to determine appropriate workplace accommodations (1-2 hours, 100 feet, 75% of day, or other notation).

| Activity | Extent of Limitation | Detailed Explanation |
|---|---|---|
| **Sensory**<br>☐ Seeing / Vision<br>☐ Hearing | ☐ Limited to: | |
| **Breathing / Respiratory** | ☐ Limited to: | |
| **Speaking** | ☐ Limited to: | |
| **Basic Mobility**<br>☑ Walking<br>☑ Climbing stairs<br>☑ Sitting<br>☑ Standing | ☑ Limited to:<br>8 Hours per day<br>200 ft Distance<br>_____ % of day | Walking, climbing, sitting, standing may increase pain. Limit would be to tolerance by patient |
| **Secondary Mobility**<br>☑ Squatting / kneeling<br>☑ Twisting (neck / waist)<br>☑ Bending / stooping<br>☑ Reaching above shoulder | ☐ Limited to:<br>∅ Hours per day | |
| **Physical Exertion**<br>☑ Pushing / pulling<br>☑ Lifting / Carrying | ☐ Limited to:<br>< 10 Number of pounds | |
| **Fine Motor Skills**<br>☐ Keyboard use<br>☐ Repetitive use of hands<br>☐ Grasping<br>☐ Fine finger motions | ☐ Limited to:<br>_____ Hours per day | |
| **Cognitive**<br>☑ Thinking<br>☑ Learning<br>☑ Comprehending<br>☑ Concentrating | ☑ Limited to: ?<br>subjective complaint | |
| **Caring for self**<br>☐ Self-medication / checks<br>☐ Dressing | ☐ Limited to: | |
| **Mental / emotional** | ☐ Limited to: | |
| **Sleeping** | ☐ Limited to: | |
| **Other / Bodily Functions** | ☐ Limited to: | |

## Certification

| Name of Health Care Practitioner, Social Worker, Rehabilitation Counselor | Signature | Date signed |
|---|---|---|
| Jennifer Hicks, APRN-CNP | Hicks CNP | 7-3-18 |

Return Page RECEIVED BY IRS-EEFAX 07/03/2018 2:48PM (GMT-05:00)

IRS-18-0720 RP
NRTF ATTACHMENT

Statement of Claim:

Whether Counselee (CL) was discriminated on the bases of Disability (Physical), when his Reasonable Accommodation for telework   was denied and his ergonomic chair fell upon him during his attempt to move it himself.

Issue 1. CL alleges his telework was denied due to disability when the Agency wouldn't move the ergonomic chair because of cost, when the chair fell and injured him, he filed for Workman's Comp which was denied.

Issue 2. CL alleges his injuries prohibited him from driving to work, therefore CL requested Reasonable Accommodation for telework however this was denied.

Resolution:

1.  Telework restored.
2.  LWOP turned to pay hours.



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

**Small Business/Self Employed**

November 12, 2021

█████████████

Small Business/Self-Employed Division

██████████████████

Alert#2021-11369

Dear █████████

In a conversation on April 9, 2021, confirmed in a letter dated April 7, 2021, you were informed by your manager that your performance had become unacceptable in the critical elements (or critical Performance expectations, stated below. You were also informed that you would be given an opportunity to improve your performance on those critical elements (or critical performance expectation) to at least a minimally successful level. You have failed to perform at the minimum level required for retention in your position, as demonstrated by the instances of unacceptable performance cited below which occurred during and prior to that period.

Therefore, this is notice of proposed action issued in accordance with Part 432 of the Code of Federal Regulations. I propose to remove you from the Internal Revenue Service, at any time after thirty (30) calendar days from the date you receive this letter.

This proposed action is based on the following:

**Reason 1: Unacceptable Performance in Critical Job Element V: Business Results-Efficiency.**
The individual performance critical job element describes how the employee promotes achievement of business results by completing assignments timely within established guidelines. The use of proper workload management and time utilization techniques is a key component of this critical job element. The aspects of this CJE are as follows:

  Aspect 5A – Completes Work Timely
  Aspect 5B – Prioritizes Work
  Aspect 5C – Gathers Information and Develops Facts

  You have failed to meet aspects:
  Aspect 5A: Completes Work Timely
  Aspect 5B: Prioritizes Work

**Specifications**

1

**5.A COMPLETES WORK TIMELY**

**Specification 1:** Regarding Taxpayer 1, the IVL dated 8/12/2021 used for time charged had not included any time input since 7/27/2021 since you had failed to provide your Form 4502 for cycle 202108 in a timely manner. Taxpayer 1 is 389 days in process as of 8/16/2021. This case is overage. The ETTR as of 4/21/2021 determined this is a one-year exam and records were in the possession of the agent on that date. The ETTR and WLR reviews (ETTR 4/28/2021, ETTR 5/5/2021, ETTR 5/12/2021, ETTR 5/19/2021, ETTR 6/2/2021, ETTR 6/16/2021, ETTR 6/23/2021, ETTR 7/7/2021, WLR 7/21/2021 and WLR 8/16/2021) showed 113.5 hours charged to Taxpayer 1. The PIP was issued to you on 04/09/2021, with the first ETTR on 4/21/2021. After April 21, you applied 43 total hours with 2 issues completed for 16 hours with supporting workpapers. The remaining 27 of hours applied had no supporting workpapers. With 113.5 hours charged for this case, a substantial amount of the audit work should have been completed. However, the WLR on 8/16/2021 showed the minimum income probes and documenting prior, subsequent, and related tax returns lead sheet had not been completed as well as the remaining issue lead sheets were incomplete. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." You are failing to complete work assignments so that both total time spent, and time span of the activities are commensurate with the nature of the work. You were given directions to issue the RAR on 7/7/2021, 7/21/2021 and 8/16/2021. You are failing to meet applicable deadlines.

**Specification 2:** Taxpayer 2 has been in process for 377 days as of the 8/16/2021 WLR. This case is overage. There are 148.5 hours charged not counting the hours posted for the 202108 cycle. You have charged 75.5 hours on this case since April 21, 2021. On April 21, 2021, you stated you had all the records in your possession that were requested from the taxpayer. The ETTR and WLR reviews (ETTR 4/28/2021, ETTR 5/5/2021, ETTR 5/12/2021, ETTR 5/19/2021, ETTR 6/2/2021, ETTR 6/16/2021, ETTR 6/23/2021, ETTR 7/7/2021, WLR 7/21/2021 and WLR 8/16/2021) showed the taxpayer records were not reviewed until 6/25/2021 and report not issued until 7/21/2021 with only one issue adjustment. An agreed Form 4549 was received 7/27/2021. The minimum income probes have not been completed. The taxpayer representative had to contact the prior examiner since he had not heard from you in months. Although this case was agreed on 7/27/2021, it still has not been closed. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." Exhibit 4.2.8-1 provides for National Standard Time Frames for Case Action. Agreed case are to be closed within 10 days of receipt of the signed report. You are failing to complete work assignments so that both the total time spent, and the time span of the activities are commensurate with the nature and complexity of the work. You had all the records necessary to complete this case by 4/21/2021 but did not issue a Form 4549 until 7/21/2021. You are supposed to close agreed cases within ten (10) days, but you have had a signed Form 4549 since 7/27/2021 and the case file is still not completed, nor case closed with an additional 75.5 hours charged since 4/21/2021.

**Specification 3:** Taxpayer 3 has been in process 329 days as of the 8/16/2021 WLR. This case is overage. There is 94.5 hours charged to both tax years except for the 202108 cycle. There were 49 hours charged as of 4/21/2021. This was a no response case in which you were directed on 4/21/2021 to write up the case disallowing the unsubstantiated issues and close for Statutory Notice of Deficiency. The ETTR and WLR reviews (ETTR 4/28/2021, ETTR 5/5/2021, ETTR 5/12/2021, ETTR 5/19/2021, ETTR 6/2/2021, ETTR 6/16/2021, ETTR 6/23/2021, ETTR 7/7/2021, WLR 7/21/2021 and WLR 8/16/2021) showed 45.5 additional hours have been charged to this case with the issue lead sheets completed except for the tax credits and additional self- employment taxes but the final Form 4549 still has not been issued. Your disallowance of expenses was copied from one lead sheet to another which does not require a great deal of time. You were instructed on 4/21/2021 to issue the Form 4549 by 4/30/2021. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." This was a no response case and you have charged 94.5 hours to disallow unsubstantiated expenses. You failed to complete this examination so that both total time spent and time span for the examination are commensurate with the nature and complexity of the work.

**Specification 4:** Taxpayer 4 has been in process 318 days and has 130.5 hours applied not including the time not charged for the 202108 cycle. This case is overage. As of the 4/21/2021 ETTR, there were 92 hours charged and you had in your possession all the records requested from the taxpayer. The ETTR and WLR reviews (ETTR 4/28/2021, ETTR 5/5/2021, ETTR 5/12/2021, ETTR 5/19/2021, ETTR 6/2/2021, ETTR 6/16/2021, ETTR 6/23/2021, ETTR 7/7/2021, WLR 7/21/2021 and WLR 8/16/2021) showed 38.5 hours have been charged between 4/21/2021and 8/16/2021. Only ten hours with three lead sheets were completed in April. No audit work was done again until 7/1/2021 with fifteen hours charged in July with the mailing of the Form 4549 on 7/21/2021. Receipt of taxpayer records should have been reviewed within 14 days so that you could have informed the taxpayer that the records were either sufficient for the issue or was informed if additional information was required. This is a change/no change examination. Since this is a no change examination, you should have closed the case within 10 days of issuing the report. However, a review of the case file showed that the minimum income probes were not completed and many of the issue lead sheets were incomplete. You are failing to meet applicable deadlines. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." Although you had all the records you needed to complete the examination as of 4/21/2021, you took 90 days and 38.5 additional hours to issue the no change Form 4549. You still have not perfected the case file. You failed to complete the examination in a timely manner commensurate with the nature and complexity of the work.

**Specification 5:** Taxpayer 5 has been in process for 270 days and has 58.5 hours charged not including the 202108 cycle hours. This case is overage. As of the 4/21/2021, you had charged 19 hours to the case. The ETTR and WLR reviews (ETTR 4/28/2021, ETTR 5/5/2021, ETTR 5/12/2021, ETTR 5/19/2021, ETTR 6/2/2021, ETTR 6/23/2021, ETTR 7/7/2021, WLR 7/21/2021 and WLR 8/16/2021) showed 39.5 additional hours charged to the case. On 5/5/2021, you charged 12.5 hours for preaudit although the initial contact letter had been mailed. The time charged is excessive for the work completed.

On 6/3/2021, you charged 8 hours to mail out an appointment package and charged 7 hours on 6/4/2021 for the same appointment packet and an interview. A review of the interview notes show that the interview should have only taken one (1) hour. You are recording the same actions on consecutive days and the time is excessive for the work completed. On 6/18/2021, 7/2/2021, 7/22/2021 and 7/30/2021, you stated you received records from the taxpayer. However, no records have been analyzed, no issue lead sheets addressed, and the minimum income probes have not been completed since the PIP began. Basically, 39.5 hours have been charged since 4/21/2021 without any audit work done except for a short interview and one income probe. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." According to Exhibit 4.2.8-1, the taxpayer records on hand as of the 6/2/2021 should have been reviewed within 14 days. You are failing to complete work assignments so that both time spent, and time span are commensurate with the nature and complexity of the work.

**Specification 6:** Taxpayer 6 has been in process for 252 days and has 43.5 hours charged without the addition of 202108 cycle time. As of the 4/21/2021 ETTR the case had 21 hours charged. The taxpayer had provided documentation electronically by 5/12/2021. The ETTR and WLR reviews (ETTR 4/28/2021, ETTR 5/5/2021, ETTR 5/12/2021, ETTR 5/19/2021, ETTR 6/2/2021, ETTR 6/16/2021, ETTR 6/23/2021, ETTR 7/7/2021, WLR 7/21/2021 and WLR 8/16/2021) showed 22.5 additional hours charged to the case. One and half hour was charged for completing a Form 872. Otherwise, the issue lead sheets were blank, no analysis of the records had been done and none of the minimum income probes were completed. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." According to Exhibit 4.2.8-1, you should have started reviewing the records received as of 5/12/2021 ETTR and/or contacted the taxpayer as to the status of the exam or issue a second Information Document Request to move the case forward within 14 days of receipt. You are failing to complete this examination so that both the total time spent, and the time span of the activities are commensurate with the nature and complexity of the work. You are also failing to meet the deadline to review taxpayer records (14 days) of receipt of those records.

**Specification 7:** Taxpayer 7 has been in process 188 days and has 83 hours charged without including the 202108-cycle time applied. The initial 4/21/2021 ETTR had 71 days in process and 12 hours charged. You started out well with this case as demonstrated in the 4/28/2021 ETTR. The ETTR and WLR reviews (ETTR 4/28/2021, ETTR 5/5/2021, ETTR 5/12/2021, ETTR 5/19/2021, ETTR 6/2/2021, ETTR 6/16/2021, ETTR 6/23/2021, ETTR 7/7/2021, WLR 7/21/2021 and WLR 8/16/2021) showed 71 additional hours charged to the case. As of the 7/21/2021 WLR 35 hours were charged completing six (6) issues. Minimum income probes were not started except for the interview. The Lead sheet 200 was blank You copied another agent's lead sheet into your case file and claimed it as your work. You are copying tax deduction law into issues income issue lead sheets. Several lead sheets were checked for the 8/16/2021 WLR. Eight were randomly checked and only two were completed. You have charged 71 hours since 4/21/2021 on this case and have not substantially completed the case. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance.

4

The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." You have failed to complete this work assignment so that both the total time spent, and the time span of the activities are commensurate with the nature and complexity of the work.

## 5.B PRIORITIZES WORK

**Specification 8:** Regarding Taxpayer 1, IRM 25.6.22.2.1(3) permits the solicitation of the statute. With the slowness of the work being completed and COVID19 work environment, the manager directed you to solicit the consent with an impending 4/15/2022 statute. You documented your case file claiming to use the Form 10949 to complete the consent. You issued the consent with the wrong Social Security number and tax year not adhering to any of the instructions or IRM guidance on the Form 10949.  You were instructed in an email after the 7/7/2021 ETTR to correct the consent and mail to the taxpayer. You are not following procedures to protect the statute. The 4/21/2021 ETTR showed that you had all the records you requested from the taxpayer. However, after sixteen (16) weeks of the PIP with weekly and bi-weekly ETTRs, the Form 4549 has not been issued, the minimum income probes have not been completed, the review of prior, subsequent, and related returns has not been done, and only two (2) issue lead sheets have been completed.  IRM 4.10.9.6 require that you follow and complete the Administrative lead sheets since they streamline the audit process, include audit steps that assist the examiner through issues, and allow audit steps to be added, modified, or eliminated. IRM 4.10.9.6.1 states that administrative lead sheets address the administrative items requiring comments and are a guide to assist the examiner in completing the examination.  You are failing to manage your workload independently and to prioritize, plan and schedule work in a logical and timely manner to complete tasks and close cases in a timely manner.

**Specification 9**: Regarding Taxpayer 2, IRM 25.6.22.2.1(3) permits the solicitation of the statute. With the slowness of the work being completed and COVID19 work environment, the manager directed you to solicit the consent with an impending 4/15/2022 statute. You documented your case file claiming to use the Form 10949 to complete the consent. You issued the consent with the wrong Social Security number and tax year not adhering to any of the instructions or IRM guidance in the Form 10949.   You were instructed in an email after the 7/7/2021 ETTR to correct the consent and mail to the taxpayer. You are not following procedures to protect the statute. You were directed 5/12/2021 to have the RAR issued by 5/18/2021. In the 5/19/2021 ETTR, you were directed to type the facts up and make a decision on the issues. You were directed in the 6/16/2021 ETTR to not postpone the casework any longer. In the 7/7/2021 ETTR, you were directed to issue the RAR by 7/21/2021 and complete the case file and reissue the corrected Form 872. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." You do not plan or prioritize your work in a logical manner to accomplish tasks or manage your workload independently. Even though you were getting weekly guidance on this case, you failed to manage your workload independently or prioritize, plan, and schedule your work to meet these deadlines and complete this taxpayer's examination.

**Specification 10:** Regarding Taxpayer 3, you were directed to write up the case and close the examination during the ETTRs or WLRs dated 4/21/2021, 5/12/2021, 6/16/2021, 7/7/2021, 7/21/2021 and 8/16/2021. You were given the original directions on this case to write it up and close with earliest deadline of 4/30/2021. The completed Form 4549 has not been issued. This taxpayer has a statute that is expiring in seven months. You are failing to prioritize, plan and schedule your work in a logical and timely manner or to protect the statute. This examination of this taxpayer should have been concluded in April of 2021 and yet the final report has not been issued after sixteen (16) weeks of guidance from your manager during your PIP.

**Specification 11:** Regarding Taxpayer 4, IRM 25.6.22.2.1(3) permits the solicitation of the statute. With the slowness of the work being completed and COVID19 working environment, the manager directed you to solicit the consent with an impending 4/15/2022 statute. The statute is especially important since this case requires a mandatory review. You documented your case file claiming to use the Form 10949 to complete the consent. You issued the consent with the wrong Social Security number and tax year not adhering to any of the instructions or IRM guidance in the Form 10949. You were instructed in an email after the 7/7/2021 ETTR to correct the consent and mail to the taxpayer. You are not following procedures to protect the statute. In the 7/7/2021 ETTR, you were directed to have the Form 4549 mailed and the case file completed by 7/21/2021. As of the 7/21/2021 and 8/16/2021 WLRs, the Form 4549 had been mailed but a substantial portion of the case file is incomplete and will not pass the review process. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination." IRM 4.10.9.6 require that you follow and complete the Administrative lead sheets since they streamline the audit process, include audit steps that assist the examiner through issues, and allow audit steps to be added, modified, or eliminated. IRM 4.10.9.6.1 states that administrative lead sheets address the administrative items requiring comments and are a guide to assist the examiner in completing the examination. Had you followed the IRM, the case would be under review and proceeding to closure. You are failing to protect the statute or prioritize, plan, and schedule your work to effectively manage your workload.

**Specification 12:** Regarding Taxpayer 5, IRM 25.6.22.2.1(3) permits the solicitation of the statute. With the slowness of the work being completed and COVID19 work environment, the manager directed you to solicit the consent. You documented your case file claiming to use the Form 10949 to complete the consent. You issued the consent with the wrong Employer Identification number and tax year not adhering to any of the instructions or IRM guidance on the Form 10949. You were instructed in an email after the 7/7/2021 ETTR to correct the consent and mail to the taxpayer. You are not following procedures to protect the statute. This examination has been open for 266 days with 58.5 hours charged with at least four (4) delivery of records, but no audit work has been done except a short interview and one minimum income probe. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." IRM 4.10.9.6 require that you follow and complete the Administrative lead sheets since they streamline the audit process, include audit steps that assist the examiner through issues, and allow audit steps to be added, modified, or eliminated. Once taxpayer information is received, it should be a priority to review (14 days) and determine the validity of the information and update the taxpayer/power of attorney as to the status of the issues and if more information is needed. You have not analyzed the records of this taxpayer although you have had taxpayer records since 6/18/2021. You are failing to prioritize, plan and

schedule work on this case in a logical and timely manner or to manage your workload independently and effectively.

**Specification 13:** Regarding Taxpayer 6, IRM 25.6.22.2.1(3) permits the solicitation of the statute. With the slowness of the work being completed and COVID19 work environment, the manager directed you to solicit the consent with an impending 4/15/2022 statute. You documented your case file claiming to use the Form 10949 to complete the consent. You issued the consent with the wrong Social Security number and tax year not adhering to any of the instructions or IRM guidance on the Form 10949. You were instructed in an email after the 7/7/2021 ETTR to correct the consent and mail to the taxpayer. This case has a 4/15/2022 statute. You are not following procedures to protect the statute. During the 7/7/2021 ETTR, you were directed to have the Form 4549 issued and the case file complete by 7/21/2021. IRM 4.10.1.4.5 states that "examiners must focus on timely actions to provide prompt assistance. The proper and efficient use of examination time is an essential element of a quality examination. Examiners are responsible for the day-to-day management of their cases to perform a quality examination." You have had the taxpayer records to review since the 5/12/2021 ETTR. None of these records have been analyzed or reviewed. You are not spending time on this case in order of priorities. You have failed to schedule and complete actions on this case in a logical and timely manner.

**Specification 14:** Regarding Taxpayer 7, IRM 25.6.22.2.1(3) permits the solicitation of the statute. With the slowness of the work being completed and COVID19 working environment, the manager directed you to solicit the consent with an impending 4/15/2022 statute. You documented your case file claiming to use the Form 10949 to complete the consent. You issued the consent with the wrong Social Security number and tax year not adhering to any of the instructions or IRM guidance on the Form 10949. You were instructed in an email after the 7/7/2021 ETTR to correct the consent and mail to the taxpayer. This case has a 4/15/2022 statute and has a mandatory review prior to closing. You are not following procedures to protect the statute. You started out well with this case starting with the PIP. However, you delayed reviewing the records until July after they were due at the end of May. Only four issue lead sheets checked are complete. No work has been completed since July. No Form 4549 has been issued. IRM 4.10.9.6 require that you follow and complete the Administrative lead sheets since they streamline the audit process, include audit steps that assist the examiner through issues, and allow audit steps to be added, modified, or eliminated. IRM 4.10.9.6.1 states that administrative lead sheets address the administrative items requiring comments and are a guide to assist the examiner in completing the examination. You are not following and most times not completing these lead sheets to keep you on track in the exam as well as to prioritize your work. You are failing to prioritize your work and schedule it in a logical and timely manner.

You have a right to the material relied on to support the reasons in this notice and may request it from Human Resources Specialist, Ms. Gregg at render.gregg@irs.gov.

Because you are restricted from making disclosure of tax information without proper approval, the tax cases covered in this letter are identified in an attachment to this letter. Tax information in this letter and the attachment, as well as the material relied upon to support the action may be used solely in connection with this action and related proceedings. A written request must be made if you wish to disclose the tax information to any person other than a Treasury employee in connection with that employee's official duties with respect to this matter. You are subject to the provisions of Internal Revenue Code 7213 and 7431 in the event of an unlawful disclosure

of information. If you designate a representative or representatives and you wish to disclose the tax information to that person or persons, each representative must sign and deliver the letter that is attached.

A letter is also attached which you may use to request a copy of the material relied on in this matter. You have the right to answer both personally and in writing and to furnish affidavits and evidence in support of your answer. Your written and/or oral reply must be received by me withing fifteen (15) calendar days from your receipt of this letter. You also have the right to be represented by an attorney or other representative. Any written reply or request for an oral reply should be addressed to via email at: Thomas.Simmons@irs.gov . Should you desire an oral reply, you must request it within seven (7) calendar days from your receipt of this letter.

If otherwise in an active-duty status, you have a right to a reasonable amount of official time to review the material relied on in this matter, to secure affidavits, and to prepare an answer. For these purposes, you be allowed four (4) hours of official time. In addition, you be allowed official time to make an oral reply if you choose to do so. You should arrange with your manager for any use of official time.

If you wish the agency to consider any medical condition that you believe has contributed to your performance problem, please contact me. You will be provided with information concerning medical documentation requirements. You may also contact me for further explanation if you do not fully understand the reasons for this proposed action.

A final decision will not be made in this matter until the expiration of the thirty (30) day advance notice period. Any replies submitted by you will be given full consideration. You will be notified in writing of the final decision. You will be retained in a work status during the advance notice period.

Sincerely,

*Thomas Simmons*

Digitally signed by 5HVC8
Date: 2021.11.12 10:04:01 -06'00'
Adobe Acrobat version: 2021.005.20058

Thomas L. Simmons
Territory Manager
EXAM GSA/Territory 6
(469) 975-6025

A sanitized copy of the notice will be provided simultaneously to the NTEU chapter that represents you and to the servicing NTEU National Field Office.

Cc: NTEU Chapter 045
     NTEU National Field Office

I acknowledge receipt of this notice_____

8

5

**ENCLOSURE**

### Request for Material Relied Upon

**Name:** ███████████

Please make available to me a copy of the material relied on to support the letter dated

_____ .

I wish to have the material relied upon mailed via overnight mail to the following address: (NOTE: Overnight mail requires the recipient's complete street mailing address, not a P.O. Box, as well as a telephone number)

_____

_____

_____

_____

Telephone Number: _____

_____         _____
Employee's Signature                                      Date

## Request to Release Tax Information to Representative

**Name:** ████████████

I understand that although I have designated a representative to represent me in this matter, he/she/they are considered third parties in this action and the Agency may only release my personal tax returns and return information to them under the terms of IRC 6103.

In order to grant the Agency permission to release my personal tax returns and return information to my representative(s) I may submit a Form 8821, Tax Information Authorization, for each individual I wish to have access to the Labor Relations Specialist named in the letter dated_____. A written statement may be submitted in lieu of the Form 8821. The written request must contain the following:

- My identifying information (name, address, SSN);
- The identity of the person to whom disclosure is to be made;
- The type of return or return information to be disclosed;
- The specific tax period(s) covered by the consent; and
- My signature.

The written request may be in any format as long as it contains the information above; however, Form 8821 has been designed to meet these requirements.

I further understand that the Agency may release this information to other Treasury Department employees in connection with that employee's official duties with respect to this personnel matter.


_____          _____

Employee's Signature                                          Date

**Internal Revenue Service**
417 20th Street North
Birmingham, AL 35282-9979

Official Business
Penalty for Private Use, $300



**Small Business/Self Employed**

November 12, 2021

Small Business/Self-Employed Division

**UPS CampusShip: View/Print Label**

1.  **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2.  **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3.  **GETTING YOUR SHIPMENT TO UPS**
    **Customers with a Daily Pickup**
    Your driver will pickup your shipment(s) as usual.

    **Customers without a Daily Pickup**
    Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
    Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
    Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
1717 N AKARD ST
DALLAS ,TX 75201

UPS Access Point™
THE UPS STORE
2633 MCKINNEY AVE
DALLAS ,TX 75204

UPS Access Point™
THE UPS STORE
1408 N RIVERFRONT BLVD
DALLAS ,TX 75207

FOLD HERE



**From:**
**To:**
**Subject:** UPS Ship Notification, Tracking Number 1Z339
**Date:** Friday, November 12, 2021 12:45:33 PM



To get an estimated delivery time for most UPS packages, click Continue

### You have a package coming.

**Scheduled Delivery Date:**    Monday, 11/15/2021                    Continue

UPS My Choice for home

| **Change Delivery** | **Manage Preferences** | **View Delivery Planner** |

This message was sent to you at the request of INTERNAL REVENUE RM 21 to notify you that the shipment information below has been transmitted to UPS. The physical package may or may not have actually been tendered to UPS for shipment. To verify the actual transit status of your shipment, click on the tracking link below.

## Shipment Details

| | |
|---|---|
| **From:** | INTERNAL REVENUE RM 21 |
| **Tracking Number:** | 1Z33 |
| **Ship To:** | |
| | US |
| **UPS Service:** | UPS NEXT DAY AIR |
| **Number of Packages:** | 1 |
| **Package Weight:** | 0.0 LBS |
| **Scheduled Delivery:** | 11/15/2021 |

U.S. POSTAGE
PME
ADA, OK 74820
OCT 09, 2025

**$33.30**

S2324Y0244

Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2023;

75242

**Retail**

RDC 07

PRIO
FLU
PK

ATIONAL USE
L HERE

X-RAY

for domestic
ns.

0 of insurance

O/DPO and

RECEIVED - 8

OCT 15 2025

MAILROOM

**UNITED STATES POSTAL SERVICE.**

Use perforation to separate starting at corners.

EI 400 764 433 US

$33.40

$33.40

10/11/25

7820

10/9/25

1:00 K

50

See DMM and TMM at pe.usps.com for complete details.
**Insurance does not cover certain items. For details regarding
claims exclusions see the Domestic Mail Manual at
http://pe.usps.com.
*Money Back Guarantee for U.S. destinations only.

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

how2recycle.info

**UNITED STATES POSTAL SERVICE.** | **PRIORITY MAIL EXPRESS®**

PHONE ( ) ____

FROM:
Ray Parker
17204 S Maple Dr
Kellyville OK 74039

TO:
United State District Court
Northern District of Texas
1100 Commerce - Room 1452
Dallas TX 75241-1310

RECEIVED - 8

OCT 15 2025

MAILROOM

EP13F October 2023
OD: 12 1/2 x 9 1/2

Scan the QR code.

USPS.COM/PICKUP

PS10001000006

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

This package is made from post-consumer waste. Please recycle - again.